# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

CAL INSURANCE COMPANY LIMITED :
a/s/o ISCAR LTD.,                :          **Civil Action No. 08-cv-3588 (SRC)**
                                 :
                    Plaintiff, :            **OPINION**
                                 :
           v.                    :
                                 :
M/V WILLIAMSBURG BRIDGE *in rem*, :
Uti (Japan) K.K.; SLT EXPRESS WAY :
INC. d/b/a SLT HEAVY HAUL; PLATT & :
ASSOC., INC.; KONLINK SHIPPING   :
PTE, LTD.; NORTH STAR SHIP       :
MANAGEMENT, LTD.; NEWLOG         :
LTD.;and NATIONAL CARGO, INC.,   :

                    Defendants.

**CHESLER**, District Judge

     This matter comes before the Court upon the motion for summary judgment filed by

Plaintiff Cal Insurance Company Ltd. (docket item #80/81).  Defendant National Cargo, Inc.

("NCI"), the only remaining defendant, has opposed the motion for summary judgment and asks

the Court to grant, sua sponte, summary judgment in favor of Defendant (docket item #84).  For

the reasons set forth below, the motion for summary judgment (docket item #81) will be denied

by the Court.  The cross-motion for summary judgment filed by Defendant (docket item #84) will

also be denied.

## FACTUAL BACKGROUND

As put forth in the Complaint, Plaintiff, an insurance company doing business in Israel, insured the shipment of the lathe[1] in question.  The lathe was manufactured by Mori Seiki in Japan and purchased by Iscar, Ltd. ("Iscar"), for resale to Ingersoll Cutting Tools in Rockford, Illinois.  Iscar hired NewLog, Ltd.  ("NewLog") to provide transportation of the lathe from Japan to Illinois.  NewLog, in turn, made arrangements with Uti K.K for ocean transportation and Tober Group for inland transportation.  Tober Group contacted Defendant NCI and requested that NCI arrange for motor carrier transportation.  Defendant NCI, in turn, contacted Mark W. Platt & Associates, Inc. ("Platt") to arrange for transportation of the lathe from Long Beach, California to Illinois.  Finally, Platt hired SLT Express Way, Inc. ("SLT") to provide the motor carrier transportation.

Plaintiff asserts the following: "PSR Logistics Inc. ("PSR") issued an invoice for the trucking of the lathe from the port of long beach to Rockford, Illinois."[2]  Furthermore, Plaintiff asserts that Platt, on behalf of NCI, instructed the hauling company on how to transport the lathe. (Motion at 4.)  Mr. James Halliday, the trucker who picked up the Shipment in Long Beach, testified that he did not wish to transport the Shipment as it was improperly tarped.  NCI allegedly advised there was a company located near the port, which would properly tarp the shipment.  Shortly thereafter, Mr. Gillette from the hauling company informed Mr. Halliday that

---

[1] A lathe is a machine tool which spins a block of material to perform various operations such as cutting, sanding, or drilling.

[2] Plaintiff's moving brief asserts that PSR and NCI are alter-egos.  At the very least, there is a substantial relation between PSR and NCI.  (See, e.g., Ex. 3, Testimony of William Rosenthal that NCI and PSR have same president, shareholders, employees and offices.)

NCI stated the tarp was fine and transportation should proceed as is.  (Motion at 5 citing Ex. 6.)

"SLT [the hauling company] demanded and received a release from NCI saying that NCI

believed the tarp on the lathe was adequate and that NCI would take full responsibility for any

loss that occurred as a result of not re-tarping."  (Id.)  Allegedly, based on such assurances, Mr.

Halliday transported the Shipment and, within 50 miles, the tarp was destroyed and the lathe

allegedly suffered severe damage due to rainwater.

Allegedly, Defendant failed to act in a "careful, diligent and workmanlike manner . . .

[and] an amount in excess of $286,000 is still due and owing by defendants as a result of the

damage to the Shipment."  (Motion at 19.)  Plaintiff's Complaint asserts four causes of action: 1)

breach of contract and/or duties under the carriage of goods by sea act; 2) breach of contract; 3)

breach of bailment obligations; 4) negligence.

## **STANDARD OF REVIEW**

Rule 56(c) provides that summary judgment should be granted "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986); Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d

Cir. 2000).  In deciding a motion for summary judgment, a court must construe all facts and

inferences in the light most favorable to the nonmoving party.  See Boyle v. Allegheny

Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998).  The moving party bears the burden of

establishing that no genuine issue of material fact remains.  See Celotex Corp. v. Catrett, 477

U.S. 317, 322-23 (1986).

Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Anderson, 477 U.S. at 247-48.  The Supreme Court has held that and Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)); Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993) ("to raise a genuine issue of material fact . . . the [non-moving party] need not match, item for item, each piece of evidence proffered by the movant," but  "must exceed the 'mere scintilla' threshold").

## ANALYSIS

### A.  Is NCI Considered A Carrier Under The Carmack Amendment?

Plaintiff asserts two theories of liability against NCI.  First, Plaintiff asserts that NCI is liable as a carrier under the Carmack Amendment.[3]  Second, even if not considered a carrier, Plaintiff alleges NCI is liable under a negligence theory.  To recover damages based on carrier liability, Plaintiff must show: 1) delivery to the carrier in good condition; 2) arrival in damaged

---

[3]"The Carmack Amendment was addressed to situations where shipments were passed from one carrier to another, often without the knowledge of the shipper.  Thus, the Carmack Amendment was intended 'to relieve shippers of the difficult, and often impossible, task of determining' which shipper caused damage to a shipment by instead holding the 'initial carrier' liable for damage caused by other shippers 'whose duty it is to forward the goods under the terms of the contract made by their principal, the initial carrier.'" Aioi v. Timely Integrated, Inc, 2009 U.S. Dist LEXIS 70822, 8-9 (S.D.N.Y. Aug. 12, 2009)

condition; and 3) amount of damages.  Missouri Pacific Railroad Co. v. Elmore & Stahl, 377

U.S. 134 (1964).   Moreover, the Defendant must also be considered a carrier.  In short, because

the amendment "imposes liability on carriers but not brokers, it is critical to determine whether a

defendant was acting as a carrier or as a broker in relation to the particular shipment that was

damaged."  Aioi Ins. Co. v. Timely Integrated, Inc., 2009 U.S. Dist LEXIS 70822, *2 (S.D.N.Y.

2009).  Plaintiff asserts that NCI is a carrier as it: 1) held itself out as such; 2) was authorized and

legally bound to transport the lathe; and 3) meets the statutory definition of a carrier.  Once a

plaintiff makes this showing, the defendant may still avoid liability by demonstrating that it was

not negligent and that the shipment was actually damaged because of "(a) the act of God; (b) the

public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or

nature of the goods." Id. at 3.

    Based upon a detailed review of the submissions, it is, at best, a contested issue if NCI is

a carrier.   Even assuming, arguendo, that Defendant is a carrier, Plaintiff has failed to establish

key elements of its claim and, therefore, summary judgment must be denied.  As discussed supra,

Plaintiff must demonstrate: 1) delivery to the carrier in good condition; 2) arrival in damaged

condition; and 3) amount of damages.  Missouri Pacific Railroad Co. v. Elmore & Stahl, 377

U.S. 134 (1964).  Plaintiff must also demonstrate condition at origin to succeed against NCI.

Security Ins. Co. v. Old Dominion Freight, 391 F.3d 77 (2nd Cir. 2004).  Plaintiff has put forth no

evidence concerning the condition of the lathe at anytime until after it was delivered at Rockford,

Illinois.  In that regard, Halliday, the truck driver, testified that the lathe was contained in a crate

and had inside coverings  (Ex. 6 at 29.)  Defendant asserts that such testimony demonstrates it

was difficult to observe the condition of the lathe itself.  Plaintiff has failed to demonstrate

delivery to carrier in good condition, a necessary element of the claim.

Relatedly, NCI asserts that Plaintiff's adjusters never determined whether the damage was caused by fresh water or salt water - raising the factual question if the damage was caused during days at sea, before the lathe arrived at Long Beach.  Plaintiff must demonstrate causation - at the very least, showing that the damage was caused during the in-land portion of the transportation. In its reply, Plaintiff attaches the declaration of Jerome Starczowski, which concludes that the lathe "had suffered damage due to incursion of rain water."  Regardless of the appropriateness of this submission,[4] this type of conclusory assertion does not speak to the condition of the goods at the time of arrival, nor is it sufficient to demonstrate the actual cause of the damage.  Penske Logistics, Inc. v KLLM, Inc., 285 F.Supp.2d 468, 472 (D.N.J. 2003) ("In establishing what type of condition the goods arrived in, a claimant must provide reliable evidence, direct or circumstantial, that proves the condition of the goods by a preponderance of the evidence.").  The one sentence certification is simply insufficient to establish that the damage was caused by rainwater.  As an expert opinion, it would undoubtedly be rejected under Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993) as, at a minimum, there is no indication of the methodologies used to determine the cause of the damage.  Indeed, while the Court does not give any weight to Defendant's certification in terms of expertise, it appears to the undersigned that, at a minimum, an open question of fact would exist as to whether or not observed rust would have formed as quickly after exposure to water as Plaintiff contends.  Moreover, as Defendant asserts, there was no test conducted to determine the cause of the damage.  Plaintiff has failed to meet its burden of

---

[4] Defendant asserts that the declaration is not in compliance with the rules regarding expert testimony (docket item #89).

6

demonstrating the condition of goods and cause of damage.  Such failures are fatal to any causes

of action against NCI.  <u>Missouri Pacific Railroad Co. v. Elmore & Stahl</u>, 377 U.S. 134 (1964).

**B.      There is Insufficient Evidence To Grant Summary Judgment On The Negligence Cause of Action**

Plaintiff also asserts that NCI is liable for negligently failing to direct the lathe be re-

tarped.  Plaintiff asserts that someone at NCI instructed that the lathe could be transported

without any additional protection and such instruction was the proximate case of the damage to

the lathe.  Such assertions are insufficient to demonstrate negligence, which requires a

demonstration that: 1) the Defendant owes a duty to Plaintiff; 2) a breach of that duty; and 3) the

breach was the proximate cause of Plaintiff's damages.  <u>Conrail v. Gottshall</u>, 512 U.S. 532, 540

(U.S. 1994)

As discussed supra, there is insufficient evidence that NCI's alleged negligence was the

proximate cause of the loss.  The conclusory assertion of Mr. Starczowski that the lathe "had

suffered damage due to incursion of rain water" is insufficient to establish proximate cause,

especially given the handwritten notation of a shipping document indicating sea water damage

before the trip began from Long Beach to Rockford.  (Defendant's Exhibit O, indicating "Driver

(SLT Heavy Haul) complained load was wet at port.").  There appears to be a material question

of fact whether the damage was caused by rain or sea water.  This question of fact is not cured by

the conclusory certification of Mr. Starczowski.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court denies the motions for summary judgment.  An

appropriate form of Order will be filed together with this Opinion.

s/ Stanley R. Chesler
Stanley R. Chesler, U.S.D.J